IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

MICAL TUCKER,     *
          *
       Plaintiff,     *
          *     Civil No. TMD 16-580
       v.     *
          *
          *
NANCY A. BERRYHILL,     *
Acting Commissioner of Social Security,     *
          *
       Defendant.[1]     *
          ************

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND**

Plaintiff Mical Tucker seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for child's disability benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 15) is **GRANTED**.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1994, has a high-school education, and has no past relevant work. R. at 22. Plaintiff filed an application for child's disability benefits on February 28, 2012, alleging disability beginning on February 10, 2012, due to a learning disability and PTSD. R. at 126-32, 155. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 55-93. On October 1, 2014, ALJ Larry K. Banks held a hearing in Washington, D.C., at which Plaintiff, his mother, and a vocational expert ("VE") testified. R. at 29-54. On February 27, 2015, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of February 10, 2012, through the date of the decision. R. at 9-28. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on December 30, 2015. R. at 1-8, 294-95. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On February 29, 2016, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

A.  **State Agency Medical Consultants**

On June 26, 2012, a state agency consultant, D. Peterson, Ph.D., using the psychiatric review technique under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental impairment under Listing 12.02 relating to organic mental disorders (R. at 60-62). See 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02. Dr. Peterson opined that, under paragraph B of the applicable listing, Plaintiff's mental impairment caused him to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 60. Dr. Peterson did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 60. Dr. Peterson thus assessed Plaintiff's mental residual functional capacity ("RFC") and opined that he was markedly limited in his ability to understand, remember, and carry out detailed instructions. R. at 63. Plaintiff was moderately limited in his ability to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) work in coordination with or proximity to others without being distracted by them; (4) interact appropriately with the general public; (5) accept instructions and to respond appropriately to criticism from supervisors; and to (6) set realistic goals or to make plans independently of others. R. at 63-64. Plaintiff otherwise was not significantly limited. R. at 63-64. Dr. Peterson opined that Plaintiff "appears able to participate in the job market with considerations for his limitations in completing complex tasks." R. at 64.

On July 15, 2013, a state agency consultant, A. Serpick, M.D., assessed Plaintiff's physical RFC. R. at 75. Dr. Serpick opined that Plaintiff could (1) lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 75. Dr. Serpick further opined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. R. at 75.

On August 15, 2013, another state agency consultant, L. Payne, Ph.D., again assessed Plaintiff's mental RFC. R. at 76-77. Dr. Payne opined that Plaintiff was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) sustain an ordinary routine without special supervision; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) respond appropriately to changes in the work setting; and to (6) set realistic goals or to make plans independently of others. R. at 76-77. Plaintiff otherwise was not significantly limited. R. at 76-77. Dr. Payne noted that Plaintiff "is distractible, has [a learning disorder] and below average IQ scores. He is able to understand and complete simple tasks independently, but can become distracted. He will need prompts to stay focused and complete tasks." R. at 77. Dr. Payne also opined that Plaintiff "will function most productively with routine, repetitive tasks that do not require extensive independent decision making." R. at 77.

**B.     Hearing Testimony**

The ALJ reviewed the testimony of Plaintiff and his mother in the ALJ's decision:

> [Plaintiff] and his mother testified that he fell 30 feet off a bridge in July 2011, striking his chest and head, after being chased. This appears to have been a

4

> result of a hapless marijuana purchase [R. at 393]. They allege he suffered a concussion and "lost a couple of discs in his spinal cord," and cannot stand or sit for long periods. They testified he cannot lift more than 40 pounds. Initially, [Plaintiff's] mother stated she feels [Plaintiff] can work and that she wants him to be successful; after the undersigned explained the rules for obtaining disability benefits, she stated she does not feel [Plaintiff] can work due to his emotional problems.
>
> [Plaintiff] alleges he has internal disc derangement with mild broad-based central disc protrusion and that he has severe depression and a learning disorder [R. at 200-34]. His mother alleges [Plaintiff] was unconscious from the time he hit the ground until the time the ambulance came; she alleges he underwent a personality change after his fall from the bridge [R. at 213].

R. at 18; *see* R. at 35-49.

The VE testified that a hypothetical individual with Plaintiff's same age, education, work experience, and the RFC outlined below in Part III could perform the unskilled, light jobs of pre-assembler of printed circuit boards and inspector.[3] R. at 51. A person "off task" up to 20% of the workday would not be able to do any work. R. at 52. The VE's testimony was consistent with the *Dictionary of Occupational Titles*.[4] R. at 263-64.

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 404.1567(b).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

# III

## Summary of ALJ's Decision

On February 27, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of "November 1, 2002 [sic]"; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) had no past relevant work; but (5) could perform work in the national economy, such as a pre-assembler of printed circuit boards or an inspector. R. at 15-23. The ALJ thus found that he was not disabled from February 10, 2012, through the date of the decision. R. at 23.

> In so finding, the ALJ found:
>
> A finding of moderate limitations in concentration, persistence or pace is warranted by [Plaintiff's] limitations in academic functioning, which limit him to simple tasks. Marked limitations are not warranted, however, because [Plaintiff] demonstrated the ability to persist on task to complete multiple lengthy tests and assessments that challenged his mental abilities.

R. at 16-17.

> The ALJ then found that Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] should do no above shoulder lifting or above shoulder constant reaching with the upper extremities. [Plaintiff] is limited to performing simple instructions (no complex tasks) with occasional contact with co-workers, supervisors and the public. Due to concentration/focus problems, [Plaintiff] would be off task five percent of the workday.

R. at 17. The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements and his mother's statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 18. The ALJ gave "some weight" to the opinions of the state agency psychological consultants, explaining that, "[a]lthough they diverged on [Plaintiff's] ability to follow complex instructions, both consultants agreed [Plaintiff's] ability to follow simple instructions is 'not significantly limited.' This finding is consistent with the evidence showing that [Plaintiff's] language skills, though deficient, are functional; he follows simple instructions well[.]" R. at 20 (citing R. at 608).

## IV

## **Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at

379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## **Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 15-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 6. Among his arguments is his contention that the ALJ did not explain his finding that Plaintiff "would be off task five percent of the workday" because of problems with concentration and focus (R. at 17). *Id.* at 7-9. Because inadequacy of the ALJ's analysis frustrates meaningful review, the Court remands this case for further proceedings.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Here, the ALJ found, among other things, that Plaintiff would be off task up to 5% of the workday because of problems with concentration and focus. R. at 17. Remand under the fourth sentence of 42 U.S.C. § 405(g) is warranted here, however, because it is unclear how the ALJ reached that particular conclusion. *See Chandler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-1408, 2016 WL 750549, at *2 (D. Md. Feb. 24, 2016). While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), "the ALJ 'must build an accurate and logical bridge from the evidence to his conclusion,'" which the ALJ did not do so here. *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The ALJ's failure to do so constitutes

reversible error. *Lewis v. Berryhill*, __ F.3d __, No. 15-2473, 2017 WL 2381113, at *8 (4th Cir. June 2, 2017). In short, the ALJ "failed to explain why he equated the facts to a [5%] reduction as opposed to the [20%] reduction he contemplated (or, for that matter, any other number). The ALJ's failure to connect his factual findings to his chosen number is particularly disconcerting because . . . the figure he discarded would have meant disability according to the VE's testimony" (R. at 52). *Lobbes v. Colvin*, No. 4:13-CV-57-RLY-WGH, 2014 WL 1607617, at *20 (S.D. Ind. Apr. 22, 2014); *see Sterling v. Colvin*, No. 1:13-CV-01132-SEB, 2014 WL 4328682, at *3 (S.D. Ind. Aug. 29, 2014) ("[I]t is inconsistent to determine [the claimant] has these moderate limitations [in social functioning and in maintaining concentration, persistence, or pace], yet also determine without explanation that she is able to stay on-task for 96-100% of the workday. The logical bridge here is not sound. If the ALJ believed [the claimant's] moderate limitations would not significantly impact her productivity, he needed to articulate why. Without such explanation, his decision is not supported by substantial evidence." (citation omitted)).

The Fourth Circuit has "held that '[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe*, 826 F.3d at 189 (alteration in original) (quoting *Radford*, 734 F.3d at 295). Because the inadequacy of the ALJ's analysis frustrates meaningful review, remand under the fourth sentence of 42 U.S.C. § 405(g) is appropriate, *see Mascio*, 780 F.3d at 636, and the Court need not address Plaintiff's remaining arguments.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 15) is **GRANTED**. Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: June 23, 2017                                      /s/
                                                         Thomas M. DiGirolamo
                                                         United States Magistrate Judge